**Affidavit of Thomas R. Crone**
**Exhibit No. 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") by and between River's Edge Foundry, LLC ("River's Edge") and Donald L. Reed ("Reed") is effective as of February 6, 2019. River's Edge and Reed individually are referred to as a "Party" and collectively are referred to as the "Parties."

WHEREAS, the Parties on October 29, 2018 reached an oral agreement to resolve all litigation pending between the Parties subject to reduction of the oral agreement to a written agreement;

NOW, THEREFORE, pursuant to that oral agreement and in further consideration of the promises set forth herein, the Parties agree as follows:

1. Within seven (7) days of the effective date of this Agreement, the Parties shall execute and file in Dane County Case No. 2017CV269 a stipulation and order incorporating the following terms: (a) dismissal without prejudice of the first count for relief in the complaint; (b) dismissal of all other claims and counterclaims with prejudice; and (c) dismissal of the action without costs to the Parties.

2. Within seven (7) days of the effective date of this Agreement, the Parties shall execute and file in Dane County Case No. 2018CV989 a stipulation and order dismissing the action without prejudice and without costs to the Parties.

3. Within fourteen (14) days of the effective date of this Agreement, River's Edge shall deliver a check payable to Reed in the sum of Fifty Seven Thousand Dollars ($57,000.00).

1


EXHIBIT A

4. River's Edge hereby assigns to Reed any and all rights and obligations, except as expressly provided in paragraph 10, including but not limited to intellectual property rights, if any, River's Edge may have under a certain agreement dated March 1, 2012, by and among The Ronald Reagan Presidential Foundation ("Foundation"), River's Edge and Reed (the "Reagan Agreement"). Reed will indemnify and hold River's Edge harmless for any obligations of River's Edge arising from a dispute between Reed and the Foundation regarding intellectual property rights under the Reagan Agreement.

5. Reed hereby assigns to River's Edge any and all intellectual property interests he may possess in a statue of Kenneth Hendricks that is currently installed adjacent to the Ironworks Hotel in Beloit, Wisconsin, including all molds created during the creation of the statue and any and all rights of attribution.

6. The Exclusive License Agreement dated November 1, 2008, between River's Edge and Reed is deemed terminated in its entirety, with all intellectual property rights to the artistic works covered by that Agreement remaining or otherwise reverting to Reed.

7. Reed shall retain possession of the Apple computer that was purchased during the period of his employment; however, he shall provide to River's Edge within fourteen (14) days of the effective date of this Agreement a USB flash drive or similar device or medium containing such images of the Reagan or Hendricks sculptures as are currently on the Apple computer in Reed's possession. Reed represents and covenants that he has not knowingly deleted any such photos

from the Apple computer and he will not do so until thirty (30) days or more after delivery of the items required in this Paragraph 7.

8. Subject to the terms of this Agreement, Reed shall manufacture and sell to River's Edge and River's Edge shall purchase from Reed no less than ten (10) bronze cast copies of the Maquette #2 at a purchase price of Twenty Seven Thousand Five Hundred Dollars ($27,500.00) per copy. Such copies shall be substantially similar in appearance, weight and size to the Maquette #2.

9. Subject to the terms of this Agreement, River's Edge shall have the right within twelve (12) months of the effective date of this Agreement to place one or more orders for the purchase of up to an additional ten (10) copies at the same price.

10. River's Edge shall be responsible for complying with the charitable contribution requirement of the Reagan Agreement for each copy ordered from Reed and shall hold Reed harmless of any liability thereunder.

11. For each copy purchased by River's Edge, payment in full shall be delivered to Reed within fifteen (15) days of acceptance.

12. The first copy shall be delivered no later than one hundred fifty (150) days after the effective date of this Agreement.

13. The remaining nine (9) copies shall be available for delivery to River's Edge within not more than nine (9) months after River's Edge's acceptance and payment of the first copy. Should River's Edge order additional copies, as provided in Paragraph 9, Reed shall have an additional period of months equal to the number of additional copies ordered in which to deliver such

3

additional copies. Reed shall endeavor, within reasonable and customary production practices, to produce multiple copies during a production run so as to enable River's Edge to obtain such copies in a timely, as needed manner. River's Edge agrees to accept delivery of copies within fifteen (15) days of written notification that the copies are available for delivery.

14. Delivery of all copies shall take place FOB, Madison, Wisconsin, or such other location as is acceptable to River's Edge and Reed.

15. For the first copy, the copy and the Maquette #2 shall be available for inspection at the same location in Madison, Wisconsin (or such other location as is acceptable to River's Edge and Reed) before River's Edge is required to take delivery.

16. River's Edge shall have a period of thirty (30) days after delivery of the first copy to accept or reject the first copy because it does not comply with the standards required under this Agreement and fifteen (15) days after delivery with respect to each additional copy. Prior to taking physical possession of any copy, the copy shall be photographed to document its condition at time of delivery.

17. A Party shall be in default of this Agreement if it fails to comply with or perform an obligation imposed under this Agreement, and such default is not cured within thirty (30) days of written receipt of notice of such event.

18. In the event of a default relating to the production or delivery of any of the bronze copies of the Maquette #2, which default is not cured as provided herein, River's Edge, in its sole discretion, has the right to assume production of all copies required to be purchased by this Agreement plus up to ten

4

additional copies, not to exceed 20 total copies. Reed shall cooperate in facilitating River's Edge's production of the copies, such cooperation to consist of providing access to the Maquette #2, if deemed necessary, by River's Edge and providing notice of consent and authorization to third parties, to the extent necessary. Reed shall not be entitled to any additional compensation related to River's Edge's production of the copies in such circumstances. Reed, however, will retain rights of attribution with respect to any copies produced by River's Edge. Upon the completion by River's Edge of the remaining order, if any, River's Edge shall return to Reed all property, including the Maquette #2, used in the production of such pieces. River's Edge shall complete the production of additional ordered copies, if any, within a time period of months that equals the number of copies to be made after the date River's Edge assumes production. For example, if 15 copies will be produced by River's Edge after River's Edge assumes production, the time period to produce such copies shall be 15 months after the date River's Edge assumes production.

19. Reed shall have a period of thirty (30) days of the effective date of this Agreement to inspect personal property of Reed located at 625 Third Street, Beloit, Wisconsin, and forty five (45) days thereafter to remove such property. Any property remaining thereafter shall be deemed abandoned and River's Edge may dispose of the property without any liability to Reed. Reed will be required to coordinate access to the facility with Jon Coulter or such other representative designated by River's Edge.

20. The following procedure shall apply with respect to any claim of default, or any claim arising hereunder or relating to this Agreement, and shall be the exclusive remedy for enforcing such claims:

(a) Except as provided in subparagraph (e), a Party asserting a claim shall provide notice of such claim within thirty (30) days of acquiring knowledge of the existence of such claim or the claim shall be deemed waived.

(b) The notice shall specify the factual basis for the claim and the amount of any loss or damage suffered by the Party as a result of such claim.

(c) The Party against whom a claim is asserted shall have a period of thirty (30) days after receipt of the notice of claim to either resolve the claim by agreement, take such action that cures or remedies the damage or loss alleged, or compensate the Party asserting the claim for any loss or damage sustained.

(d) Within sixty (60) days after expiration of the thirty (30) day period in subparagraph (c), the Party asserting the claim may serve on the other Party notice of submission of the dispute to binding arbitration before a three (3) person arbitration panel. Failure to comply with this subparagraph (d) shall be deemed a waiver of such claim.

(e) In the event the claim submitted to arbitration arises out of or relates to Reed's personal property, in such event River's Edge shall have fourteen (14) days after receipt of the notice specified in subparagraph (d) to serve on Reed a notice of counterclaims and/or affirmative defenses River's Edge intends to assert in response to such claim by

6

Reed, or such counterclaims and affirmative defenses shall be deemed waived.

(f) The Parties shall each select an arbitrator, and the arbitrators selected by the Parties shall select a third arbitrator.

(g) Any dispute submitted to arbitration shall be held in Dane County, Wisconsin and shall proceed in accordance with the Commercial Rules of the American Arbitration Association ("AAA").

(h) Notwithstanding the AAA rules, each party shall, as a condition for participation in any arbitration hearing, timely pay one half (1/2) of all invoices for fees and costs of arbitration. Notwithstanding this provision, the arbitrators shall have authority to award reasonable attorneys' fees and reimbursement of all expenses of arbitration, to the prevailing Party.

21. <u>Mutual Waiver and Release of Claims:</u> Except as provided for in this Agreement, each Party hereby waives and releases the other Party from any and all claims for relief, whether known or unknown, and agrees to indemnify and hold harmless the other Party from all costs, damages, expenses, including reasonable attorneys' fees, or loss of any other kind incurred by the other Party as a result of a breach of this paragraph.

22. <u>Assignment:</u> This Agreement may not be assigned by Reed, but may be assigned by River's Edge. In the event of Reed's death, all of Reed's rights under this Agreement shall inure to the benefit of his estate.

23. <u>Notices</u>: Any notices required or provided pursuant to this Agreement shall be delivered by U.S. Certified Mail or by other overnight courier service and shall be addressed as follows:

(a)   If to River's Edge:

>   River's Edge Foundry, LLC
>   c/o Jon Coulter
>   Hendricks Holding Company
>   690 Third Street, Suite 300
>   Beloit, WI 53511

and

>   Kerkman & Dunn
>   c/o Michael Dunn
>   839 N. Jefferson Street
>   Suite 400
>   Milwaukee, WI 53202

and

>   Hendricks Holdings Company, Inc.
>   c/o Karl W. Leo, Chief Legal Officer
>   200 Randolph Avenue
>   Huntsville, AL 35801

(b)   If to Reed:

>   Donald L. Reed
>
>   3154 N. River Road
>   Oregon, IL 61061

and

>   Thomas R. Crone
>   von Briesen & Roper, s.c.
>   10 E. Doty Street, Suite 900
>   Madison, WI 53703

24. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement of the parties as to the matters addressed herein and may not be altered, amended or

8

modified in any respect except by a written agreement signed by each of the Parties. All prior agreements, whether oral or written are merged into this Agreement.

25. The Parties each warrant and represent as follows:

   (a) they have read this Agreement and understand its terms;

   (b) they have been represented by counsel in the negotiation and execution of this Agreement and have had opportunity to consult with such counsel regarding the terms of this Agreement and the meanings of such terms; and

   (c) all authorizations required for the execution of this Agreement have been obtained and neither Party has conveyed, or otherwise disposed of any claims such Party may possess against the other Party.

26. Duplicate originals of this Agreement shall be executed and each party shall retain an original; provided, however, the Agreement may be executed in counterparts and all counterparts shall constitute one agreement.

27. This Agreement shall be binding on the heirs, successors and assigns of the Parties, as the case may be.

River's Edge Foundry, LLC

By: *Jon Coulter*

Jon Coulter, Authorized Representative

_____

Donald L. Reed

modified in any respect except by a written agreement signed by each of the Parties. All prior agreements, whether oral or written are merged into this Agreement.

25. The Parties each warrant and represent as follows:

    (a) they have read this Agreement and understand its terms;

    (b) they have been represented by counsel in the negotiation and execution of this Agreement and have had opportunity to consult with such counsel regarding the terms of this Agreement and the meanings of such terms; and

    (c) all authorizations required for the execution of this Agreement have been obtained and neither Party has conveyed, or otherwise disposed of any claims such Party may possess against the other Party.

26. Duplicate originals of this Agreement shall be executed and each party shall retain an original; provided, however, the Agreement may be executed in counterparts and all counterparts shall constitute one agreement.

27. This Agreement shall be binding on the heirs, successors and assigns of the Parties, as the case may be.

River's Edge Foundry, LLC

By:_____
Jon Coulter, Authorized Representative


_____
Donald L. Reed

9